This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| | | |
|---|---|---|
| **STATE OF ILLINOIS, CIRCUIT COURT** <br><br> Livingston COUNTY | **SUMMONS** | |

**Instructions ▼**

Enter above the county name where the case was filed.

Enter your name as Plaintiff/Petitioner.

Enter the names of all people you are suing as Defendants/ Respondents.

Enter the Case Number given by the Circuit Clerk.

Samantha Marshall and Rachel Groll
**Plaintiff / Petitioner** (First, middle, last name)

v.

Village of Dwight, a Municipal Corporation
**Defendant / Respondent** (First, middle, last name)

2022LA20
**Case Number**

☐ **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.)

**IMPORTANT INFORMATION:**

There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org.

**Plaintiff/Petitioner:**

Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent.

In 1a, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here.

1. **Defendant/Respondent's address and service information:**

   a. Defendant/Respondent's primary address/information for service:
      Name (First, Middle, Last):  Village of Dwight
      Registered Agent's name, if any:  Paul Johnson - Village President
      Street Address, Unit #:  305 E. William Street
      City, State, ZIP:  Dwight, Illinois  60420
      Telephone: _____  Email: _____

In 1b, enter a second address for Defendant/ Respondent, if you have one.

   b. If you have more than one address where Defendant/Respondent might be found, list that here:
      Name (First, Middle, Last): _____
      Street Address, Unit #: _____
      City, State, ZIP: _____
      Telephone: _____  Email: _____

In 1c, check how you are sending your documents to Defendant/ Respondent.

   c. Method of service on Defendant/Respondent:
      ☑ Sheriff           ☐ Sheriff outside Illinois: _____
                                                    *County & State*
      ☐ Special process server       ☐ Licensed private detective

Enter the Case Number given by the Circuit Clerk: 2022LA20

| | |
|---|---|
| In 2, enter the amount of money owed to you. | **2. Information about the lawsuit:** Amount claimed: $ 50,000.00 |
| In 3, enter your complete address, telephone number, and email address, if you have one. | **3. Contact information for the Plaintiff/Petitioner:** Name (First, Middle, Last): Hart McLaughlin & Eldridge, LLC Street Address, Unit #: 22 W. Washington St., Suite 1600 City, State, ZIP: Chicago, Illinois 60602 Telephone: (312) 955-0545    Email: beldridge@hmelegal.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| Important information for the person getting this form | You have been sued. Read all of the documents attached to this *Summons*. To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |
|---|---|

| | |
|---|---|
| Check 4a or 4b. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box 4a. Otherwise, if the clerk gives you a court date, check box 4b. | **4. Instructions for person receiving this *Summons* (Defendant):** ☑ a. To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at: Address: 110 N. Main Street City, State, ZIP: Pontiac, Illinois 61764 |
| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b. Attend court: On: _____ at _____ ☐ a.m. ☐ p.m. in _____ <br>     *Date*     *Time*     *Courtroom* <br> **In-person at:** |
| In 4b, fill out: <br>• The court date and time the clerk gave you. <br>• The courtroom and address of the court building. <br>• The call-in or video information for remote appearances (if applicable). <br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | _____ <br> *Courthouse Address*    *City*        *State*    *ZIP* <br> OR <br> **Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"): <br>    By telephone: _____ <br>        *Call-in number for telephone remote appearance* <br>    By video conference: _____ <br>        *Video conference website* <br> _____ <br>    *Video conference log-in information (meeting ID, password, etc.)* <br> Call the Circuit Clerk at: _____ or visit their website <br>        *Circuit Clerk's phone number* <br> at: _____ to find out more about how to do this. <br>    *Website* |

| | |
|---|---|
| **STOP!** The Circuit Clerk will fill in this section. | Witness this Date: 6/2/2022    ALT <br> Clerk of the Court: *LeAnn Dixon* |
| **STOP!** The officer or process server will fill in the Date of Service. | This *Summons* must be served within 30 days of the witness date. <br><br> Date of Service: _____ <br> *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

SU-S 1503.2                                    Page 2 of 4                                    (06/21)

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Livingston _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | |
|---|---|---|
| **Instructions**<br>Enter above the county name where the case was filed.<br><br>Enter your name as Plaintiff/Petitioner.<br><br>Enter the names of all people you are suing as Defendants/Respondents.<br><br>Enter the Case Number given by the Circuit Clerk. | Samantha Marshall and Rachel Groll<br>**Plaintiff / Petitioner** *(First, middle, last name)*<br><br>v.<br><br>Village of Dwight, a Municipal Corporation<br>**Defendant / Respondent** *(First, middle, last name)*<br><br>☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |
| | | 2022LA20<br>**Case Number** |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
　　　　　　　*First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent
_____ as follows:
*First, Middle, Last*

　　　☐ Personally on the Defendant/Respondent:
　　　　　Male ☐　Female ☐　Non-Binary ☐　Approx. Age: _____　Race: _____
　　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　　Address, Unit#: _____
　　　　　City, State, ZIP: _____

　　　☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
　　　　　member or lives there:
　　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　　Address, Unit#: _____
　　　　　City, State, ZIP: _____
　　　　　And left it with: _____
　　　　　　　　　　　　　　*First, Middle, Last*
　　　　　Male ☐　Female ☐　Non-Binary ☐　Approx. Age: _____　Race: _____
　　　　　and by sending a copy to this defendant in a postage-paid, sealed envelope to the
　　　　　above address on _____ , 20 ____

　　　☐ On the Corporation's agent, _____
　　　　　　　　　　　　　　　　　　*First, Middle, Last*
　　　　　Male ☐　Female ☐　Non-Binary ☐　Approx. Age: _____　Race: _____
　　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　　Address: _____
　　　　　City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 2022LA20

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| DO NOT complete this section. The sheriff or private process server will complete it. |
|---|

**If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.**

| Under the Code of Civil Procedure, 735 ILCS 5 1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. |
|---|

**By:**

_____
*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

_____
                 *County and State*
                 ☐ Special process server
                 ☐ Licensed private detective

_____
*Print Name*

**FEES**

Service and Return: $ _____
Miles _____ $ _____
Total _____ $ 0.00

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

EFILED IN CIRCUIT COURT
LIVINGSTON COUNTY, ILLINOIS
6/1/2022 10:02 PM
LeAnn Dixon
CIRCUIT CLERK

STATE OF ILLINOIS
ELEVENTH JUDICIAL CIRCUIT
COUNTY OF LIVINGSTON

| | | |
|---|---|---|
| SAMANTHA MARSHALL and RACHEL GROLL, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. **2022LA20** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| VILLAGE OF DWIGHT, a Municipal Corporation, | ) ) ) | |
| Defendant. | ) | |

## COMPLAINT AT LAW

Plaintiffs, Samantha Marshall and Rachel Groll, by and through their attorneys, Hart McLaughlin & Eldridge, LLC, and Frank W. Nagorka, complaining of Defendant, the Village of Dwight ("the Village" or "Defendant"), state as follows:

### Introduction

1.      Samantha Marshall and Rachel Groll were well-qualified paramedics with the Village of Dwight. Both had a history of high-quality patient care and high-level overall job performance. They also loved their jobs and cherished their roles in providing emergency medical services in the community.

2.      On December 13, 2021, the Village terminated Ms. Marshall from her job. Three weeks later, on January 4, 2022, the Village terminated Ms. Groll.

3.      Both Ms. Marshall and Ms. Groll were women in a field commonly dominated by men and were terminated by the arbitrary and capricious decisions of men who reported to and/or served on the Village Board.

1

4.      Although employment positions in the state of Illinois are typically "at will," that was not the case with Ms. Marshall and Ms. Groll. Pursuant to Illinois law and official Village policies they could only be terminated for cause.

5.      There was no cause to terminate Ms. Marshall or Ms. Groll. The purported justifications provided by the Village were contrived and baseless. Other comparable Village employees have had employment transgressions far more significant that those Ms. Marshall and Ms. Groll were cited for – which were not transgressions at all – and yet those employees have not been terminated or even disciplined.

6.      Additionally, Ms. Marshall and Ms. Groll were denied due process before being terminated. To avoid challenge and scrutiny, the Village purposefully terminated Ms. Marshall and Ms. Groll without providing due notice or a reasonable opportunity for them to participate in the process. The Village's failure to provide due process shows its consciousness of guilt.

7.      Ms. Marshall and Ms. Groll seek redress for the Village's conduct. They should not have been terminated in the first instance, and in the absence of a remedy that would restore the status quo, they are seeking compensation for lost wages, humiliation, embarrassment, and mental anguish they have sustained.

### Parties, Jurisdiction, and Venue

8.      This Court has subject matter jurisdiction over this case because Plaintiffs' claims arise under Illinois statutes and common law.

9.      Plaintiff Samantha Marshall is domiciled in Grundy County.

10.     Plaintiff Rachel Groll is domiciled in Livingston County.

11.     The Village of Dwight is a municipal corporation with its principal office located in Livingston County.

12.     Venue in Livingston County is proper because Defendant resides in Livingston County and because a substantial portion of the conduct giving rise to Plaintiffs' claims occurred in Livingston County.

**Factual Background**

**A.  Samantha Marshall and Rachel Groll were "regular" employees of the Village**

13.     The Village of Dwight hired Plaintiffs Samantha Marshall and Rachel Groll as paramedics on or about April 1, 2020.

14.     At all relevant times, the Village had in full force and effect a policy ("the Policy") that placed employees, including paramedics, on probationary status for six months. (Exhibit A.) Under the Policy, while an employee was on probationary status, they could be terminated "if his/her performance as determined by the Village Administrator does not meet necessary minimum standards." Policy at 3.8.1.

15.     Under the Policy, an employee who successfully completes her probationary period becomes a "regular" employee of the Village. The Policy defines a "regular" employee as "one who is hired for an unspecified term of employment and has completed the probationary period . . . ." *Id.*

16.     At the time of they were terminated, both Ms. Marshall and Ms. Groll had successfully completed their six-month probationary periods and were therefore "regular" employees under the Policy.

17.     After Ms. Marshall's termination, the Village, through Chief Tim Henson, told Ms. Marshall that she was a "probationary" employee. This was not a correct classification for Ms. Marshall and was pretextual.

18.     Under the Policy, the probationary period "shall be used to closely observe the employees' performance in a new position and fitness for the position." Policy at 3.8.1. The probationary period only applies when (i) an applicant is appointed to a new or existing position; (ii)

3

a former employee is reinstated to a new or existing position; or (iii) a current employee is promoted to a new or existing position. Policy 3.8.1.

19.     After Ms. Marshall completed her initial probationary period in or about December 2020, she went to part-time and then returned to full-time. She was still, however, a "regular" employee because the Policy defines a "regular" employee to be either full-time or part-time. Policy 3.10.B.

20.     As a result, Ms. Marshall's transition from full-time, to part-time, and then back to full-time did not place here back into probationary status.

21.     The fact that the Village went through some process (though not due process) prior to terminating Ms. Marshall reveals that it treated Ms. Marshall as "regular" employee and that its post hoc classification of Ms. Marshall as a "probationary" employee was baseless and pretextual.

**B. Pursuant to the Policy and Illinois law, Samantha Marshall and Rachel Groll could only be terminated for cause**

22.     Under Illinois law, a regular employee has a property interest in her job and can only be terminated "for cause." 625 ILCS 10-2.1-17.

23.     Similarly, pursuant to the Policy, a regular employee may only be discharged "for cause." Policy at 5.4.3.

24.     Because the Policy requires "cause" prior to discharge, and because neither Ms. Marshall nor Ms. Groll did anything that would remotely constitute "cause" for termination, both Ms. Marshall and Ms. Groll had a legitimate expectation for continued employment.

25.     The Policy outlines "standards of conduct and work performance," none of which were violated by either Ms. Marshall or Ms. Groll. Policy at 8.15.

26.     The Policy also outlines the potential disciplinary actions, which progress as follows: (i) oral reprimand; (ii) written reprimand; (iii) suspension of five days or less; (iv) suspension of five days or more; (v) release or discharge. Policy at 8.16.III.

27.     Even assuming for argument's sake that Ms. Marshall or Ms. Groll did anything in violation of the "standards of conduct and work performance" – they did not – any such conduct would, at a minimum, support a reprimand. In no event would the conduct support release or discharge.

28.     For these reasons as well, Ms. Marshall and Ms. Groll had a legitimate expectation of continued employment.

### C. Pursuant to the Policy, Illinois law, and the United States and Illinois Constitutions, Samantha Marshall and Rachel Groll were entitled to due process

32.     The Policy requires that prior to any discharge proceedings, the Village must document the specific charges with sufficient clarity to allow the employee to understand the charges and defend against them. Policy at 8.16.III. Additionally, pursuant to the Policy, "the employee shall be given an opportunity to discuss the reason(s) begin considered for his/her dismissal in a meeting with his/her department head and the Village Administrator." 8.16.III.

33.     Similarly, under Illinois law, a regular employee has a property interest in her job and can only be terminated "for cause, upon written charges, and after an opportunity to be heard in her own defense." 625 ILCS 10-2.1-17.

34.     Further, under the United States Constitution and Illinois Constitution, no person can be deprived of property law without due process of law. U.S. CONST., amends. V & XIV; ILL. CONST. Art. 1, § 2.

### D. The events preceding the Village's termination of Ms. Marshall and Ms. Groll

35.     On December 7, 2021, Plaintiff Rachel Groll's mother, Dawn Trizna, came to the Village's EMS building with a medical emergency requiring immediate attention because she was suffering significant respiratory distress.

36.     Mrs. Trizna had been diagnosed with Covid-19 on November 26, 2021, but she had received a physician's note stating she was not contagious and could return to work by December 5,

5

2021. Both Ms. Marshall and Ms. Groll were aware that Mrs. Trizna previously had Covid-19 but was no longer contagious at the time of the events in question.

37.     When Mrs. Trizna arrived at the EMS building, she was in respiratory distress and in the fetal position.

38.     Based upon their professional judgment, Ms. Marshall and Ms. Groll reasonably concluded that Mrs. Trizna needed immediate and potential life-saving care. Ms. Marshall and Ms. Groll started treatment and determined that Mrs. Trizna needed ALS (Advanced Life Support) transport to the hospital.

39.     The Village did not have an ALS ambulance available because it was on another call, nor did the Village call for a change of quarters (i.e., a backup ambulance at the ready).

40.     Chief Henson called for an ambulance from Gardner, Illinois. However, while the Gardner ambulance was en route, Ms. Marshall learned that it was not an ALS ambulance and, therefore, would not be suitable to transport Mrs. Trizna given her condition.

41.     While Ms. Marshall and Ms. Groll continued to provide life-saving care to Mrs. Trizna, Ms. Marshall cancelled the ambulance from Gardner and instead requested emergency assistance from the EMS department in Coal City, Illinois, which had an ALS ambulance properly equipped to transport Mrs. Trizna.

42.     The Coal City ALS ambulance arrived at the Village EMS building and transported Mrs. Trizna to a hospital. Fortunately, Mrs. Trizna survived, no doubt in part due to the emergency care and treatment provided by Ms. Marshall and Ms. Groll.

43.     After Mrs. Trizna was taken to the hospital by Coal City's ALS ambulance, Ms. Marshall was confronted by Chief Henson (Ms. Groll had gone with Mrs. Trizna, her mother, in the ambulance). Chief Henson told Ms. Marshall that because Mrs. Trizna had Covid-19, Ms. Marshall

would need to immediately quarantine for 14 days. He also criticized Ms. Marshall for not wearing a mask.

44.     At this time, the Village's EMS unit had no written policies or guidelines that required Ms. Marshall or Ms. Groll to wear a mask, nor had the Village done proper fit-testing for N95 masks. Further, because the ambulance was out of service and there was no backup rig, Plaintiffs could not easily locate personal protective equipment. Due Mrs. Trizna's dire status and the advanced care needed, Ms. Marshall and Ms. Groll exercised their professional judgment in prioritizing the treatment of their patient as opposed to spending precious time to look for masks.

45.     Chief Henson, who at all relevant times was also present in the EMS building, did not wear a mask.

46.     Not only were Ms. Marshall and Ms. Groll aware that it had been 11 days since Mrs. Trizna's diagnosis, but they were also aware that Mrs. Trizna was free to return to work by December 5, 2021, two days before the subject events.

47.     Further, the initial encounter with Mrs. Trizna occurred outside and, after she was brought inside, she had a non-rebreather mask on.

48.     Because Ms. Groll went to the hospital with her mother and because Ms. Marshall was sent into immediate 14-day quarantine, the written report for the care and treatment for Mrs. Trizna was not immediately completed.

**Samantha Marshall**

49.     On December 9, 2021, while Ms. Marshall was still in quarantine, she received a call from Chief Henson and the Village Administrator stating there was a Village Board meeting on December 13, 2021, to discuss her possible termination.

50.     On the night of the December 13, 2021 meeting, Ms. Marshall was still in quarantine. Although she was able to call into the board meeting, the Village Administrator terminated the call

with Ms. Marshall before the meeting went into closed session to discuss and vote on her possible termination.

51.     Ms. Marshall subsequently learned that she was terminated at the meeting. One of the board members told her that her fate was sealed prior to the meeting.

52.     The Village had no basis to discipline, let alone terminate Ms. Marshall.

53.     Ms. Marshall never received a termination letter or anything else in writing from the Village explaining its reasoning for terminating her.

54.     The Village Board never issued any written findings of fact wherein it detailed the evidence or facts it took into account in deciding to terminate Ms. Marshall.

55.     Ms. Marshall was therefore not given an adequate hearing regarding her termination, thereby depriving her of her due process rights.

56.     Given Ms. Marshall's history of good conduct and excellent patient care, to the extent any discipline was in order – it was not – at most, Ms. Marshall should have received a warning.

**Rachel Groll**

57.     On or about December 22, 2021, Ms. Groll met with Chief Henson and Village Administrator Kevin McNamara to discuss the December 7 incident. Also present at this meeting were Ms. Groll's colleagues.

58.     Neither Ms. Groll nor her colleagues were permitted to speak at this meeting. Instead, Chief Henson and Village Administrator McNamara simply told Ms. Groll – without providing her anything in writing – that they were recommending that the Village Board terminate her solely for her failure to wear a face covering while treating Mrs. Trizna outdoors. Ms. Groll was not allowed to ask questions or plead her case to interim EMS Chief Henson or Village Administrator McNamara.

59.     On or about December 30, 2021, the Village Board scheduled a special board meeting for January 4, 2022, at 4:30 pm. Among the agenda items for the January 4 meeting was Ms. Groll's termination.

60.     Ms. Groll was first informed of the January 4 meeting via a telephone call from Village Administrator McNamara on January 3, 2022. She was never given any other notice – let alone written notice – of the meeting. Ms. Groll was therefore not given sufficient notice of the Village Board's decision to terminate her.

61.     At the January 4 meeting, the Village Board excluded Ms. Groll the portion of the executive session in which the Board deliberated and voted on her termination.

62.     Ms. Groll never received a termination letter or anything else in writing from the Village explaining its reasoning for terminating her.

63.     The Village Board never issued any written findings of fact wherein it detailed the evidence or facts it took into account in deciding to terminate Ms. Groll.

64.     Ms. Groll was therefore not given an adequate hearing regarding her termination, thereby depriving her of her due process rights.

65.     Given Ms. Groll's history of good conduct and excellent patient care, to the extent any discipline was in order – it was not – at most, Ms. Groll should have received a warning.

<u>Count 1</u>
**Violation of 65 ILCS 5/10-2.1-17**
**Samantha Marshall v. Village of Dwight**

66.     Each of the foregoing paragraphs is incorporated herein as if fully restated.

67.     At all relevant times, there was in full force and effect 65 ILCS 5/10-2.1-17, a section of the Illinois Municipal Code (hereinafter "the Statute").

68.     Under the Statute, Ms. Marshall could only be terminated for cause. 65 ILCS 5/10-2.1-17.

9

69.     Ms. Marshall was not terminated for cause.

70.     As a direct and proximate result of Ms. Marshall's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

**Count 2**
**Breach of Contract**
**Samantha Marshall v. Village of Dwight**

71.     Each of the foregoing paragraphs is incorporated herein as if fully restated.

72.     The Village's Policy, as described above, only permits discharge of an employee for cause.

73.     Further, based upon the terms of the Policy, as described above, Ms. Marshall had a reasonable expectation of continued employment.

74.     Ms. Marshall was not terminated for cause.

75.     Pursuant to the Policy, Ms. Marshall was entitled to "notice of release or discharge . . . in writing . . . [stating] the specific charges with such clarity and particularity that the employee will understand the charges made against him/her and will be able to answer them if he/she so desires."

76.     Ms. Marshall was not provided with such notice.

77.     Pursuant to the Policy, Ms. Marshall was entitled to "a meeting with his/her department head and the Village Administrator."

78.     Ms. Marshall was not provided with that meeting.

79.     Pursuant to the Policy, any discipline should be commensurate with the offense committed.

80.     Ms. Marshall's termination was not commensurate with the purported offenses.

81.     As a direct and proximate result of Ms. Marshall's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

### Count 3
#### Violation of U.S. and Illinois Constitutions
#### Samantha Marshall v. Village of Dwight

82.     Each of the foregoing paragraphs is incorporated herein as if fully restated.

83.     Before a governmental agency deprives an individual of property, it must provide that individual with the procedural due process guaranteed by the U.S. and Illinois Constitutions.

84.     Under the United States Constitution and Illinois Constitution, no person can be deprived of property law without due process of law. U.S. CONST., amends. V & XIV; ILL. CONST. Art. 1, § 2.

85.     Ms. Marshall was denied due process of law.

86.     As a direct and proximate result of Ms. Marshall's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

### Count 4
#### Violation of 65 ILCS 5/10-2.1-17
#### Rachel Groll v. Village of Dwight

87.     Each of the foregoing paragraphs is incorporated herein as if fully restated.

88.     At all relevant times, there was in full force and effect 65 ILCS 5/10-2.1-17, a section of the Illinois Municipal Code (hereinafter "the Statute").

89.     Under the Statute, Ms. Groll could only be terminated for cause. 65 ILCS 5/10-2.1-17.

90.     Ms. Groll was not terminated for cause.

11

91.     As a direct and proximate result of Ms. Groll's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

### Count 5
### Breach of Contract
### Rachel Groll v. Village of Dwight

92.     Each of the foregoing paragraphs is incorporated herein as if fully restated.

93.     The Village's Policy, as described above, only permits discharge of an employee for cause.

94.     Further, based upon the terms of the Policy, as described above, Ms. Groll had a reasonable expectation of continued employment.

95.     Ms. Groll was not terminated for cause.

96.     Pursuant to the Policy, Ms. Groll was entitled to "notice of release or discharge . . . in writing . . . [stating] the specific charges with such clarity and particularly that the employee will understand the charges made against him/her and will be able to answer them if he/she so desires."

97.     Ms. Groll was not provided with such notice.

98.     Pursuant to the Policy, Ms. Groll was entitled to "a meeting with his/her department head and the Village Administrator."

99.     Ms. Groll was not provided with that meeting.

100.    Pursuant to the Policy, any discipline should be commensurate with the offense committed.

101.    Ms. Groll's termination was not commensurate with the purported offenses.

102.    As a direct and proximate result of Ms. Groll's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

## Count 6
### Violation of U.S. and Illinois Constitutions
### Rachel Groll v. Village of Dwight

103.    Each of the foregoing paragraphs is incorporated herein as if fully restated.

104.    Before a governmental agency deprives an individual of property, it must provide that individual with the procedural due process guaranteed by the U.S. and Illinois Constitutions.

105.    Under the United States Constitution and Illinois Constitution, no person can be deprived of property law without due process of law. U.S. CONST., amends. V & XIV; ILL. CONST. Art. 1, § 2.

106.    Ms. Groll was denied due process of law.

107.    As a direct and proximate result of Ms. Groll's termination, she suffered damages, including but not limited to lost wages, and general damages for humiliation, embarrassment, and mental anguish.

### Prayer for Relief

WHEREFORE, Plaintiffs Samantha Marshall and Rachel Groll, by and through their attorneys, Hart McLaughlin & Eldridge, LLC, and Frank W. Nagorka, respectfully request that this Court enter an Order granting the following relief against the Village of Dwight:

A.    Awarding Plaintiffs actual damages;

B.    Awarding punitive damages;

C.    Awarding Plaintiffs their reasonable costs;

D.    Awarding Plaintiffs their attorneys' fees; and

E.    Awarding such other and further relief as the Court deems reasonable and just.

13

**Jury Demand**

Plaintiffs demand a trial by jury in this action on each and every one of their claims.

Respectfully submitted,

HART MCLAUGHLIN & ELDRIDGE, LLC

By:  ___/s/ Brian Eldridge___

Brian Eldridge (ARDC no. 6281336)          Frank Nagorka (ARDC no. 3126543)
Blake Stubbs (ARDC no. 6318047)            3836 N. Kenneth Ave.
HART MCLAUGHLIN & ELDRIDGE, LLC            Chicago, IL 60641
22 W. Washington St., Suite 1600           (773) 283-7910
Chicago, Illinois 60602                    frankemtp@aol.com
(312) 955-0545
beldridge@hmelegal.com
bstubbs@hmelegal.com

*Attorneys for Plaintiffs*

EFILED IN CIRCUIT COURT
LIVINGSTON COUNTY, ILLINOIS
6/1/2022 10:02 PM
LeAnn Dixon
CIRCUIT CLERK

## STATE OF ILLINOIS
## ELEVENTH JUDICIAL CIRCUIT
## COUNTY OF LIVINGSTON

| | |
|---|---|
| SAMANTHA MARSHALL and RACHEL GROLL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| VILLAGE OF DWIGHT, a Municipal Corporation, ) | JURY DEMANDED |
| ) | |
| Defendant. ) | |

### AFFIDAVIT OF DAMAGES

Pursuant to Illinois Supreme Court Rule 222(b), counsel for the above-named Plaintiffs certify

that Plaintiffs are seeking money damages in excess of fifty thousand dollars ($50,000.00).

Dated: June 1, 2022                    /s/ *Brian Eldridge*
                                       One of the Attorneys for Plaintiff

Brian Eldridge (ARDC no. 6281336)        Frank Nagorka (ARDC no. 3126543)
Blake Stubbs (ARDC no. 6318047)          3836 N. Kenneth Ave.
HART MCLAUGHLIN & ELDRIDGE, LLC          Chicago, IL 60641
22 W. Washington St., Suite 1600         (773) 283-7910
Chicago, Illinois 60602                  frankemtp@aol.com
(312) 955-0545
beldridge@hmelegal.com
bstubbs@hmelegal.com

*Attorneys for Plaintiffs*

1

# EXHIBIT A

# VILLAGE OF DWIGHT
# PERSONNEL POLICY MANUAL

ADOPTED

JUNE 25, 1984

UPDATED JANUARY 2013

DECEMBER 2019

Dear Village of Dwight Employee:

      We welcome you as an employee of the Village of Dwight. This Personnel Policy Manual, together with the rules, regulations and policies of your respective department, will explain your duties, responsibilities and benefits as an employee of our Village. In order to be fully informed about our policies and procedures as they apply to you, please read all of the information. After you have become familiar with the content, you may want to discuss areas of question with your immediate Supervisor.

Sincerely,

Jared E. Anderson
President, Village of Dwight

Kevin McNamara
Village Administrator

3.8    Probation and Continued Employment.

    3.8.1 Probation:

        The probationary period is an essential part of the evaluation process and shall be used to closely observe the employees' performance in a new position and fitness for the position. During such period, an employee whose performance does not meet the required standard of work may be separated from that position without recourse to appeal. A person employed by the Village of Dwight in any of the following ways shall serve a probationary period:

        1.      Appointment of an applicant to a new or existing position;

        2.      Reinstatement of a former employee to a new or existing position;

        3.      Promotion of a current employee to a new or existing position.

        The probationary period shall consist of the first six (6) months of actual service following the date of appointment action requiring such period unless specified otherwise in writing.

        The Village Board, after determining that rare or unusual circumstances or conditions exist with respect to a probationary employee, insomuch as it prevents the making of a full and fair determination as a basis for granting regular status or separating the employee from the Village, may grant an extension of the probationary period upon recommendation of the Village Administrator.

        During a probationary period, an employee may be transferred or dismissed without recourse, if his/her performance as determined by the Village Administrator does not meet necessary minimum standards.

        Successful completion of the probationary period shall not be construed as creating a contract or promise of continued employment with the Village. Employees who complete the probationary period shall continue with the Village as at-will employees unless the terms and conditions of their employment are set forth in a collective bargaining agreement.

    3.8.2    Continued Employment:

        Continued employment with the Village of Dwight shall depend on a satisfactory completion of a probationary period, satisfactory work performance, need for the work performed and the availability of funds. Each regular employee shall have his/her performance evaluated annually by their immediate supervisor or at a more frequent interval as deemed necessary by the Village Administrator. Such evaluation shall be undertaken by use of the Villages' performance evaluation form.

3.9   Medical Examinations.

Every prospective regular full-time employee must pass a physical examination and drug screening conducted by a licensed physician before being appointed. This examination is administered by a physician arranged for by the Village. The cost of the examination will be paid by the Village.

3.10   Classification of Employment.

All employees shall be appointed by the Village President, with the advice and consent of the Board of Trustees.

A.   Classification Categories

All employees will be classified in one of the following categories:

Regular full-time (RF)
Regular part-time (RP)
Temporary full-time (TF)
Temporary part-time (TP)

An employee's working hours and benefits depend on the job requirements of the employee's job and whether the employee is a regular or temporary employee, full-time, or part-time, or an exempt or non-exempt employee.

B.   Employee Types Defined

Regular.

A regular employee is one who is hired for an unspecified term of employment and has completed the probationary period as hereafter described. A regular employee may be employed on either a full-time or part-time basis.

Temporary.

A temporary employee is one who is hired for a stated term of employment as determined by a specific job assignment. This term of employment would have a pre-determined termination date. Temporary employees may work either full-time or part-time work schedules.

Full-time.

A full-time employee is an employee who is scheduled to work 40 hours per calendar week or a probationary or appointed police officer.

Part-time.

A part-time employee is one who works less than thirty (30) hours and shall not include a probationary or appointed police officer.

Exempt.

Exempt employees are those municipal officers and supervisory and other employees who are not subject to the Fair Labor Standards Act and are compensated on a fixed salary basis, regardless of the number of hours worked. Exempt employees are not eligible for overtime pay.

Nonexempt.

Nonexempt employees are those employees who are not exempted under the Fair Labor Standards Act. The exemptions are based on job activities, responsibilities, and rate of pay. Nonexempt employees shall be paid not less than one and one-half (1½) times such employee's regular hourly rate of pay for each hour worked in excess of 40 hours in a work week. Police officers will only be paid for overtime hours in excess of those agreed to work in the Shift and Overtime Agreement attached in the appendix of this document and signed by such officer and they shall be subject to specific exemptions as provided in the Fair Labor Standards Act.

C.     Exempt Supervisory Personnel

Municipal officers and employees in the following positions are supervisory personnel and are exempt:

Village Administrator
Department Heads:
        Director of Public Works
        Chief of Police
        EMS Director

Others:
        Assistant Director of Public Works
        Comptroller

3.11    Official Personnel Files.

The Village Clerk's Office shall be responsible for maintaining the official personnel file on all employees. These files shall be confidential and contain the complete history of each employee during employment by the Village. The files shall consist of, but are not limited to: dates and records of injuries, commendations, reprimands, performance evaluations, accidents or damage involving Village property, employment application and education or special training received at Village expense.

Access to an employee's personnel file shall be limited to the Village Administrator, Village Clerk, Village President, Village Trustees, and such administrative personnel as the Village Administrator may designate.

Employees who are promoted will be paid the starting rate in the wage schedule for that job title, unless a higher rate has been recommended by the Village Administrator and approved by the Village Board of Trustees.

5.3    Temporary Appointments.

Temporary appointments may be made for periods of up to six months in length.   All temporary appointments must be approved by the Village Administrator before becoming effective. Temporary appointments need not be made from established lists.

5.4    Separation.

Separation from employment may be accomplished by resignation, release, discharge and retirement, as hereinafter defined:

Definitions:

1.    Resignation:  Voluntary separation initiated by the employee:

    a.    With Notice - Notification of intent to resign is given in advance of the last day of work according to the following schedule:   non-supervisory employees, two weeks (ten working days); supervisory employees, four weeks (twenty working days);

    b.    With Insufficient Notice - Notification of intent to resign is given in advance of the last day of work but less than the "With Notice" period of time specified above; and

    c.    Without Notice - No notification of resignation is given, or if given, after the last day of work.

    Notice must be in writing, dated and submitted to the immediate Supervisor.   The day on which the notice is presented to the employee's department head shall be considered as the first day of the notice.   The Supervisor shall then notify the respective Department Head and the Village Administrator.

2.    Release:  Involuntary separation initiated by the Village because of the employee's unsatisfactory performance or because of the elimination of position or lack of work.

3.    Discharge:  Involuntary termination initiated by the Village for cause.

4.    Retirement:   Voluntary separation in accordance with provisions of the I.M.R.F.

Employee attendance records that show poor attendance are to be investigated by the supervisor and/or department head and where such attendance is deemed unacceptable, the supervisor or department head shall have the authority to issue a formal written reprimand and/or suspension without pay or recommend to the Village Administrator dismissal of the employee. All written reprimands and suspensions shall be forwarded to the Village Clerk's Office for inclusion in the employee's personnel file. A recommendation for dismissal shall be sent to the Village Administrator.

8.13    On-the-Job Safety.

The Village of Dwight has a sincere concern for ensuring the health and safety of its employees while they are engaged in their daily working operations. The efficiency of Village government operations is directly related to the competence and well-being of all employees. The Village acknowledges its obligation, as an employer, to provide the safest possible working conditions for employees, and, as a governmental unit, to provide a safe environment for the public which benefits from those services.

8.14    Grievance Procedure.

To assure a fair and equitable application of policies, rules and regulations, all employees have the right to register a grievance without being disciplined or discriminated against in any way because of his/her proper use of the grievance procedure. All grievances shall be pursued in the following manner.

If an employee has a complaint or grievance concerning his/her job classification, supervisor, rules, regulations, policies, workstation or its condition, salary or benefits, he/she should first discuss the problem with his or her supervisor. If the employee is dissatisfied with the result of that discussion, he or she may discuss the grievance with his or her Department Head. If no resolution to the grievance is achieved at that level then the employee may seek a review of the grievance by the Village Administrator. This request must be in writing and state the specific facts which form the basis of the grievance. At his/her discretion, the Village Administrator may discuss the grievance with the Village Board prior to responding to the employee. The Village Administrator's decision is final.

8.15    Code of Ethics/Rules of Conduct Applicable to All Employees.

The tenure of every employee shall be contingent upon acceptable conduct, satisfactory performance of duties, and compliance with the Personnel Rules and Regulations. Failure to meet such standards of conduct and work performance for any of the following listed reasons, such list is not to be considered all-inclusive, shall be cause for reprimand, suspension with or without pay, release or discharge.

1.    That the employee is incompetent, negligent or inefficient in the performance of his/her duties.

2.    That the employee has been abusive in his/her attitude and language or has been abusive in his/her conduct to their fellow employees, superior or the public.

3.    That the employee has violated any lawful or official regulation, order or rule, or failed to obey any lawful and reasonable direction given him/her by their supervisor.

4.    That the employee has taken for personal use a fee, gift, or other valuable thing in the course of work or in connection with employment without reporting its receipt to his/her department head and Village Administrator.

5.    That the employee's failure to pay, or make reasonable provisions to pay, his/her just debts has jeopardized the Village service or caused annoyance to the Village officials due to the creditors collection methods.

6.    That the employee has been convicted of a criminal offense and, after an individualized assessment it is determined that the employee can no longer be employed due to the nature of the offense and the nature of the employee's position with the Village.

7.    That the employee, through culpable negligence or willful misconduct, has caused damage to public property or waste of public supplies.

8.    That the employee has been absent without leave, has failed to report upon the expiration of an approved leave of absence, or has been excessively absent or tardy.

9.    That the employee has directly or indirectly participated in a local political campaign in any manner as to violate any of the regulations set forth in the political activity section of this Code.

10.    That the employee has solicited private business during working hours or has used his/her Village position to try to secure or to conduct private business.

11.    That the employee is found to have made a false statement in his/her application for employment.

12.    That the employee refuses to have his/her fingerprints or photograph taken or to take a psychological examination if so directed by the department head or Village Administrator.

13.    That the employee has hindered the regular operation of the department because of unauthorized absenteeism, tardiness or has absented himself/herself from duty during regular working hours.

5.  Uniforms provided for employees shall be worn only during working hours or for official Village business outside working hours. Uniforms may be worn to or from work, unless department rules specify otherwise, but are not to be worn during any personal activity other than as related above.

6.  Employees determined to have been sleeping on duty shall be subject to the following disciplinary action:

    a.  1st Offense - The individual will be given three (3) scheduled days off without pay.

    b.  2nd Offense - (Within a twelve-month period) - The individual will be given seven (7) scheduled working days off without pay.

    c.  3rd Offense- (Within a twelve-month period) - The individual will be discharged.

8.16   Disciplinary Action.

Whenever an employee violates any of the regulations or code of ethics outlined in this section and/or in this entire Personnel Manual, the department head shall begin disciplinary action in any of the steps listed below, depending on the seriousness of the offense committed. In the case of police officers, if the Personnel Policy Manual is in conflict with the Uniform Peace Officers Disciplinary Act (Chapter 85 2551 et seq.) the Uniform Peace Officers Disciplinary Act shall supersede the Personnel Policy Manual.

I.   Reprimands:

1.  Oral - For minor offenses the employee should be given a verbal warning. A written record of conversation of the oral warning should be forwarded to the Village Clerk's Office for placement in the employee's file. After one year, if there are no repeated offenses of the same, or similar, nature, the oral warning shall be removed from the employee's personnel file.

2.  Written - When the seriousness of the offense committed is such that the warning should be in writing, it shall include the nature of the offense and extent of the warning. The employee shall acknowledge receipt of the warning by signing and dating the notice of written reprimand. A copy of the reprimand shall be forwarded to the Village Administrator within twenty-four (24) hours of the action taken. The Village Administrator shall then forward it to the Village Clerk's Office for placement in the employee's file.

II.     Suspensions:

1.  Any action on the part of an employee which is in violation of the orders of his/her supervisors or contrary to the policies or rules of his/her department or the Village, but not serious enough to warrant dismissal, may be disciplined by suspension without pay for a period not to exceed five (5) work days.  This authority is to be exercised by the department head. Recommendation for such action may be made by the employee's supervisor.  Prior to issuance of a notice of suspension, the nature of the offense is to be reviewed with the Village Administrator.

2.  For any suspension in excess of five (5) days requires the approval of the Village Board of Trustees.

III.    Release and discharge:

The department head may recommend to the Village Administrator the release or discharge of any employee when appropriate.  The Village Administrator will make a determination whether to recommend the release or discharge of the employee to the Village Board of Trustees or if other action should be taken to remedy the situation.

Prior to release or discharge, the employee shall be given an opportunity to discuss the reason(s) being considered for his/her dismissal in a meeting with his/her department head and the Village Administrator.  A notice of release or discharge shall be in writing and shall state the specific charges with such clarity and particularity that the employee will understand the charges made against him/her and will be able to answer them if he/she so desires.

It should be emphasized that department heads or the Village Administrator are not required to go through all the steps (I, II, III, listed above) involved in this disciplinary procedure.  Discipline may begin at any step in the procedure depending on the seriousness of the offense committed.  Any discipline administered by a supervisor should be commensurate with the offense committed.  In addition, the department head may repeat any of the first three steps of this procedure when he/she feels it is necessary, so long as the discipline is commensurate with the offense committed.  If there is any doubt what step to begin with, the Village Administrator should be consulted.

8.17    Appeal from Disciplinary Action.

General Personnel.  Employees may appeal any disciplinary action within three days of issuance consistent with the Grievance Procedure contained herein in Section 8.14.